IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM EVERETT MITCHELL,<br><br>Defendant. | CR 24-58-BLG-SPW<br><br><br>ORDER |

On September 12, 2024, Defendant William Everett Mitchell moved to dismiss the indictment charging him with being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) based on the United States Supreme Court's decision, *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). (Docs. 29, 29-2). Mitchell argues that the Ninth Circuit's decision in *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010), upholding § 922(g)(1)'s constitutionality, is irreconcilable as to *Bruen*. (Doc. 29-2 at 3). Under *Bruen*, Mitchell contends that "barring non-violent felons from possessing firearms is not consistent with the Nation's historical tradition of firearm regulation." (Doc. 29-2 at 4). Mitchell asks this Court to find § 922(g)(1) unconstitutional as applied to him, a nonviolent felon. (Doc. 29-2 at 9). The Government did not respond.

For the following reasons, the Court denies Mitchell's motion.

1

I.  **Factual Background**

On April 23, 2024, Mitchell was charged with possession of a firearm or ammunition by a felon in violation of 18 U.S.C. § 922(g)(1). (Doc. 2). According to Mitchell, on August 8, 2021, at approximately 4:26 a.m., Park County Deputy Ryan Call saw a Jeep Cherokee parked in a field off Chicken Creek Lane in Park County, Montana. (Doc. 29-2 at 2). Mitchell was the sole occupant in the Jeep. (*Id.*). Due to fire restrictions in the area, Deputy Call approached Mitchell to inform him that he was not allowed to park off road. (*Id.*). During the exchange between Mitchell and Deputy Call, Deputy Call learned that Mitchell "had an old warrant from Sweet Grass County." (*Id.*). Meanwhile, another officer on scene saw a pistol in plain view in the back seat of the Jeep. (*Id.*). Mitchell admitted to possessing three firearms in the vehicle. (*Id.*). Mitchell was arrested and then indicted by a federal grand jury of the instant offense. (Doc. 2). According to Mitchell, his felonious history involves abuse of alcohol including, most recently, operating a motor vehicle while under the influence of alcohol and/or drugs from 2016 in Idaho. (Doc. 29-2 at 3; Doc. 30).

II. **Legal Standard**

Federal Rule of Criminal Procedure 12(b)(1) provides that a party may raise by pretrial motion any defense, objection, or request that the Court can determine without a trial on the merits. A pretrial motion is proper when it involves questions

of law rather than fact. *United States v. Shortt Acct. Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986). The Court has determined Mitchell's motion is appropriate for pre-trial resolution because it solely involves a question of law.

### III. Analysis

The Second Amendment guarantees as follows: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In 2022, the Supreme Court decided *Bruen* finding that the Second Amendment's plain text coupled with an historical analysis of our Nation's gun regulation traditions protects an individual's right to carry a handgun for self defense. *Bruen*, 597 U.S. at 17, 28–29. The Court rejected the means-end scrutiny tests previously applied by appellate courts, holding instead that courts must apply "[t]he test set forth in *Heller*" to "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 26 (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008)).

Here, Mitchell claims that under *Bruen* "the blanket felon disposition law at 18 U.S.C. § 922(g)(1) is unconstitutional as applied to [him]," a nonviolent felon. (Doc. 29-2 at 3). Mitchell argues that: (1) the Second Amendment's plain text protects his person and conduct and (2) "permanently barring non-violent felons

3

from possessing firearms is not consistent with the Nation's historical tradition of firearm regulation." (*Id.* at 3–4).

Before addressing Mitchell's arguments, the Court must briefly address the Second Amendment's jurisprudence status in the Ninth Circuit as it relates to § 922(g)(1). In May 2024, a Ninth Circuit three judge panel found that 18 U.S.C. § 922(g)(1) was unconstitutional as applied to the nonviolent felon defendant in that case. *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024). At that time, *Duarte* was the most recent decision related to the constitutionality of § 922(g)(1) in the Ninth Circuit. In July 2024, the Ninth Circuit granted rehearing *en banc* in *Duarte* and vacated the panel's decision. 101 F.4th 657, *reh'g en banc granted, opinion vacated*, 108 F.4th 786 (9th Cir. Jul. 17, 2024) (mem.). This Court recognizes that "a decision that has been vacated has no precedential authority whatsoever." *Marley v. United States*, 567 F.3d 1030, 1038 (9th Cir. 2009) (internal citation omitted).

Provided the vacated status of *Duarte*, the Court will first address the authority of *Vongxay*. The Court will then analyze Mitchell's arguments under *Bruen*.

   *A.*   Vongxay *Governs*

This Court is bound by the ruling in *Vongxay*. Without *Duarte*, *Vongxay's* precedent stands, as this Court, other judges in the District of Montana, and other district courts in the Ninth Circuit have repeatedly held before *Duarte* and after *Duarte* was vacated. *See, e.g., United States v. Page*, CR 23-06-H, 2023 WL

4

8702081, at *2 (D. Mont. Dec. 15, 2023) (collecting District of Montana and other Ninth Circuit district courts holding that *Vongxay* "remains binding authority after *Bruen*"); *United States v. Thomas*, 2:22-cr-0129, 2024 WL 3459059, at *1 (D. Nev. July 18, 2024) (applying *Vongxay* after *Duarte* was vacated); *United States v. Coleman*, CR-23-02363-001, 2024 WL 3890710, at *2 (D. Ariz. July 29, 2024), *report and recommendation adopted by* 2024 WL 3888700 (same). Those courts applying *Vongxay* have held that § 922(g)(1) "passes constitutional scrutiny." *Page*, 2023 WL 8702081, at *2.

This Court joins in upholding § 922(g)(1) because *Vongxay* is clear on the matter. 594 F.3d at 1116–17;[1] *see also United States v. Whitney*, No. 22-10326, 2024 WL 1429461, at *2 (9th Cir. Apr. 3, 2024) ("The felon-in-possession statute, 18 U.S.C. § 922(g)(1) is facially constitutional."). The court in *Vongxay* reasoned in accordance with *Heller* that denying felons the right to bear arms is consistent with the Second Amendment to maintain the security of a free state. *Vongxay*, 594 F.3d at 1117. *Vongxay* also is clear that there is no constitutional distinction between

---

[1] Importantly, *Vongxay* did not apply the means-end scrutiny struck down by *Bruen*. Rather, it analyzed whether the Second Amendment historically allowed for the regulation of the possession of firearms by felons. It held that "most scholars of the Second Amendment agree that the right to bear arms was 'inextricably ... tied to' the concept of a 'virtuous citizen[ry]' that would protect society through 'defensive use of arms against criminals, oppressive officials, and foreign enemies alike,' and that 'the right to bear arms does not preclude laws disarming the unvirtuous citizens (i.e. criminals ....)." 594 F.3d at 1118 (quoting Don B. Kates, Jr. *The Second Amendment: A Dialogue*, 49 Law & Contemp. Probs. 143, 146 (1986); citing Glenn Harlan Reynolds, *A Critical Guide to the Second Amendment*, 62 Tenn. L. Rev. 461, 480 (1995) (noting that felons "were excluded from the right to arms" because they were "deemed incapable of virtue.")).

5

violent and nonviolent felons, undermining Mitchell's claim that his nonviolent felonies would exclude him from § 922(g)(1)'s prohibition. *Id.* at 1116–17; *see also United States v. Phillips*, 827 F.3d 1171, 1173–74 (9th Cir. 2016); *Coleman*, 2024 WL 3890710, at *2.

Here, Mitchell's challenge must fail under *Vongxay* for two reasons. First, provided the current precedent in the Ninth Circuit, § 922(g)(1) is facially constitutional and still applies to Mitchell. Second, that Mitchell's felony is nonviolent has no bearing on this Court's constitutional analysis of § 922(g)(1) because no such distinction exists under *Vongxay*.

*B.    Bruen Analysis*

Without *Vongxay*, Mitchell argues that under *Bruen*, his conduct is protected by the Second Amendment's plain text and that § 922(g)(1) as applied to nonviolent felons is inconsistent with our Nation's gun regulation traditions. (Doc. 29-2 at 3–4). The Court disagrees.

Like other rights, Second Amendment rights are not unlimited. *Bruen*, 597 U.S. at 21. The "ever-evolving 'history-and-tradition' test outlined in *Bruen* and modified" by the Court's decision earlier this year in *United States v. Rahimi* "requires a two-step analysis to determine whether a law complies with the Second Amendment." *United States v. Youngblood*, __ F. Supp. 3d __ 2024 WL 3449554,

at *3 (D. Mont. 2024) (citing 602 U.S.___, 144 S. Ct. 1889, 1926–27 (2024) (Jackson, J., concurring)).

First, if "the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 24. Second, to regulate protected conduct, the government must show that its regulation "is consistent with the Nation's historical tradition of firearm regulation." *Id.* The historical analysis requires courts to pay close attention to "[w]hy and how the regulation burdens the right." *Rahimi*, 144 S. Ct. at 1898; *Bruen*, 597 at 29. When engaging in analogical inquiry, "[a] court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'applying faithfully the balance struck by the founding generation to modern circumstances.'" *Rahimi*, 144 S. Ct. at 1898 (quoting *Bruen*, 597 U.S. at 29); *see also Bruen*, 597 U.S. at 30 (requiring the government to "identify a well-established and representative historical *analogue*, not a historical *twin*.") (emphasis in original). Specifically, "the government must prove that the firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 20. "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Bruen*, 597 U.S. at 24 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10 (1961).

*1.     Plain Text*

Considering the first step of the *Bruen* test, Mitchell argues that the pistol (a type of handgun), the place he carried the pistol, and his person fall under the protection of the Second Amendment's plain text. (Doc. 29-2 at 3–4).

Undoubtedly handguns qualify as "arms" under the Second Amendment. *See Bruen*, 597 U.S. at 19, 31–32. Mitchell carried his firearm outside the home, though the "proposed course of conduct" for carrying his handgun is unknown. *Id.* at 32. The Second Amendment text does not draw a "home/public distinction," so the Court will move forward with the analysis relying on *Bruen's* reasoning that confining "the right to 'bear' arms to the home would nullify half of the Second Amendment's operative protections." *Id.*; U.S. Const. amend. II.

Material to the plain text analysis, Mitchell argues that he is a protected person under the Second Amendment as a citizen of the United States. (Doc. 29-2 at 3–4 (citing *United States v. Perez-Garcia*, 96 F.4th 1166, 1175 (9th Cir. 2024); *District of Colombia v. Heller*, 554 U.S. 570, 581 (2008) (The Second Amendment guarantees to "all Americans" the right to bear commonly used arms in public.))). However, no higher court has ruled on whether felons are included in the "people" protected by the Second Amendment. District courts in the Ninth Circuit seem to agree that, under *Heller* and *Bruen*, the Second Amendment right is limited to law-abiding citizens, not felons. *See United States v. Butts*, 637 F. Supp. 3d 1134, 1137–

38 (D. Mont. 2022) (holding that the Second Amendment is not extended to felons based on *Bruen* and *Heller*'s repeated references to "law-abiding citizens" and statements that felon dispossession statutes are "presumptively lawful"); *United States v. Roberts*, 710 F. Supp. 3d 658, 672 n.157 (D. Alaska 2024) (collecting cases holding the same).

In contrast, other courts apply a "rights-based analysis," which asserts that "all people have the right to keep and bear arms but that history and tradition support Congress's power to strip certain groups of that right."[2] *Roberts*, 710 F. Supp. 3d at 675 (quoting *Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019) (J. Barrett, dissenting)); *see also United States v. Montes*, No. 1:23-cr-00182-1, 2024 WL 3904631, at *4 (N.D. Ill. Aug. 22, 2024) (holding that felons are within the "people" covered by the Second Amendment because *Heller* and *Bruen*'s discussion of law-abiding citizens' Second Amendment rights did not decide the question of the scope of the right and because "the people" covered by other constitutional rights only sometimes excludes felons).

As the matter is unresolved by the Ninth Circuit and Mitchell does not brief in detail, the Court will assume without deciding that the first step is satisfied. *See*

---

[2] *Duarte* adopted the rights-based approach, holding that "the people" means "all Americans," not a "unspecified subset" of people. 101 F.4th at 671 (quoting *Heller*, 554 U.S. at 580–81); *Youngblood*, 2024 WL 3449554, at *4 (relying on *Duarte* before it was vacated in holding that that a defendant charged under § 922(g)(8) is covered by the Second Amendment's plain text because he is "an American citizen who possessed arms in common use."). Again, as *Duarte* is no longer good law, the Court is not bound to apply the rights-based approach.

*Roberts*, 710 F. Supp. 3d at 676–77 ("Given these disparate approaches to determining whether an individual's conduct is plainly covered by the Second Amendment, the Court assumes that the Second Amendment's plain text covers Roberts' conduct[.]").

### 2. Historical Analogues

Moving to the second step, the Court finds that historical analogues for the prohibition on the possession of weapons by both nonviolent and violent felons exist and are well documented in the courts. *See Medina v. Whitaker*, 913 F.2d 152, 158 (D.C. Cir. 2019) (discussing the evidence of the "tradition and history" that demonstrates that felons, including "non-dangerous" felons, do not have a right to bear arms under the Second Amendment); *United States v. Ramos*, 2:21-cr-00395, 2022 WL 17491967, at *4–*5 (C.D. Cal. Aug. 5, 2022) (discussing laws in existence at the founding that provide representative analogues to the felon in possession statute). Most of the Founding Era laws cited by courts restricted the possession of firearms by unvirtuous persons, which included felons who committed nonviolent crimes. *Medina*, 913 F.3d at 158–59 (describing how nonviolent crimes such as forgery and horse theft were felony crimes at the time of the Second Amendment ratification); *United States v. Yancey*, 621 F.3d 681, 684–85 (7th Cir. 2010) ("[M]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm

10

unvirtuous citizens." (cleaned up)); *Ramos*, 2022 WL 17491967, at *4 (discussing Founding Era laws that allowed for the dispossession of firearms from unvirtuous persons, which included common law felons).

This conclusion is affirmed by the Court's decisions in *Heller*, *McDonald*, *Bruen*, and *Rahimi*. In *Heller*, the Court wrote that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons …." 554 U.S. at 626. Two years later, in *McDonald v. City of Chicago*, the Court "repeat[ed] [its] assurances" that felon dispossession laws remain valid. 561 U.S. 742, 786 (2010). Then, in *Bruen*, the majority stated that its holding "was in keeping with *Heller*" and repeatedly used the term "law-abiding citizen" in reference to the scope of an individual's Second Amendment rights. 597 U.S. at 9, 29, 31, 38, 60, 70. In a concurring opinion in *Bruen*, Justice Kavanaugh, joined by the Chief Justice, "underscore[d]" that "the Second Amendment allows a 'variety' of gun regulations," and that nothing in the Court's opinion "'should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill[.]'" *Id.* at 81 (quoting *Heller*, 554 U.S. at 626 n.26).

Finally, the Chief Justice in the *Rahimi* majority once again affirmed that "many … prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" 144 S. Ct. at 1902; *see also United States v. Morales*, No. 24-cr-84, 2024 WL 3345982, at *2 (S.D.N.Y. July 8, 2024) (citing

*Rahimi*, 144 S. Ct. at 1901) (holding that the *Rahimi* majority's "discussion of the long history of firearm regulations prohibiting dangerous persons from possessing arms aligns with the conclusion of the courts above: that § 922(g)(1), limited as it is to adjudicated felons, is consistent with the nation's historical tradition of firearm regulation."). The Court does not distinguish between violent and nonviolent felons in any of these cases.

Accordingly, the weight of both the historical evidence and Supreme Court precedent demonstrates the constitutionality of 18 U.S.C. § 922(g)(1) as applied to Mitchell under the *Bruen* framework.

IV. **Conclusion**

IT IS SO ORDERED that Defendant William Everertt Mitchell's Motion to Dismiss (Doc. 29) is DENIED.

DATED this 22nd day of October, 2024

SUSAN P. WATTERS
United States District Judge