IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM EVERETT MITCHELL,<br><br>Defendant. | CR 24-58-BLG-SPW<br><br>ORDER |

Before the Court is a Motion to Suppress filed by Defendant William Everett Mitchell. (Doc. 31). Mitchell seeks to suppress the discovery of a firearm and any related statements made to officers. (Doc. 32 at 1). Mitchell argues that the evidence seized was a result of an illegal *Terry* stop and should be suppressed as fruit of the poisonous tree. (*Id.* at 1, 8). Specifically, Mitchell argues that the officers lacked the necessary reasonable suspicion to satisfy Fourth Amendment standards. (*Id.* at 4–7).

In response, the Government argues that the Court should deny Mitchell's motion because law enforcement had reasonable suspicion to seize Mitchell based on the officer's observations of Mitchell's vehicle parked off the road on private land. (Doc. 37 at 8). As a result of seeing the parked vehicle, the officer believed that Mitchell was trespassing or violating a county fire restriction ordinance. (*Id.*).

1

Additionally, the Government argues that the on-scene officers gleaned enough new facts during their investigation to continue detaining Mitchell until his arrest. (*Id.* at 11).

The Court held a hearing on November 1, 2024, during which Park County Sergeant[1] Ryan Call testified. The Court finds the material facts are not disputed based on the parties' briefing, Sergeant Call's testimony, and related video footage.

For the following reasons, the Court denies Mitchell's motion.

## I.   Background

At the suppression hearing, Sergeant Call testified that he worked the graveyard shift, from 9 p.m. to 7 a.m., on August 8, 2021, in Park County, Montana. Sergeant Call testified that around 4:30 a.m., he was driving outside of Livingston on Chicken Creek Lane to return to the patrol offices. While driving, he noticed a gold Jeep Cherokee parked in a field approximately 15 yards from the gravel road. According to Sergeant Call, the Jeep had not been in the field when he drove away from the patrol offices about a half hour earlier. Sergeant Call testified that the Jeep was parked on private land. Due to a potential trespassing violation and Park County fire restrictions in place at the time, Sergeant Call parked his patrol car and walked out to the Jeep to check on the vehicle and its occupants. (Doc. 32 at 2; Doc. 37 at

---

[1] At the time of the arrest, Sergeant Call was a Deputy. The Court will refer to him as Sergeant Call throughout the Order because he has since been promoted.

2

2; Doc. 37-2). Sergeant Call knocked on the driver's side window and after several seconds, Mitchell responded and opened the door. (Doc. 37 at 2; Doc. 39 at 01:46–01:56).

Sergeant Call informed Mitchell that he was parked on private property and requested to see his driver's license and registration. (Doc. 39 at 01:57–02:18). Mitchell told Sergeant Call that he did not have his driver's license on him, and that the Jeep was registered to his girlfriend. (*Id.*). However, several seconds later, Mitchell informed Sergeant Call that his license and wallet were in the car. (*Id.* at 02:20–03:04). After Mitchell found his wallet, Sergeant Call learned that Mitchell's license was suspended. (*Id.* at 03:16–03:26). Consequently, Sergeant Call radioed dispatch to verify Mitchell's identification and vehicle registration. (*Id.* at 03:30–04:55). Before communicating with dispatch, Sergeant Call asked Mitchell whether he had weapons in the vehicle to which Mitchell responded that he did not. (*Id.* 03:37–03:43).

After dispatch ran Mitchell's name, Sergeant Call learned that Mitchell had an outstanding warrant out of Sweet Grass County. (Doc. 32 at 2; Doc. 37 at 2). Sergeant Call reapproached Mitchell while Deputy Luther joined Sergeant Call at the scene. (Doc. 39 at 05:58–07:24). While dispatch investigated the warrant, Sergeant Call detained Mitchell, and informed him of the local fire ordinance in place, including the restriction on off road/trail vehicle operation and associated fine.

(Doc. 39 at 07:15–08:55; Doc 37-2 at 3, 4). Meanwhile, Deputy Luther walked around the Jeep's exterior and observed a firearm inside the vehicle. (Doc. 39 at 10:50–11:12). After Deputy Luther saw the firearm, Mitchell admitted to possession of three firearms in the Jeep, a DUI conviction out of Idaho, and that he was on parole in Idaho. (Doc. 39 at 10:55–13:21; Doc. 37-1). After learning this information, Sergeant Call placed Mitchell under arrest. (Doc. 39 at 13:30–13:51).

Subsequently, the Montana Sixth Judicial District Court granted Park County officers a search warrant for the Jeep and they discovered: (1) a Berretta Tomcat .32 cal pistol (SN DAA060517); (2) a Llama .45 cal pistol (SN C1744); (3) a Norinko SKS 7.62 cal rifle (SN 1716838); (4) three .22 call bullets; (5) fifty .45 cal bullets; (6) a vitamin container of .22 cal bullets; and (7) a metal box half filled with 7.62 ammunition. (Doc. 37 at 7).

Mitchell was indicted by a federal grand jury charging him with being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Doc. 2). According to Mitchell, his felonious history involves alcohol abuse including, most recently, operating a motor vehicle while under the influence of alcohol and/or drugs from 2016 in Idaho. (Doc. 29-2 at 3; Doc. 30).

## II.   Legal Standard

A pretrial challenge to the introduction of evidence at trial is generally considered pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure.

"In order to effectuate the Fourth Amendment's guarantee of freedom from unreasonable searches and seizures, [the United States Supreme Court] conferred upon defendants in federal prosecutions the right, upon motion and proof, to have excluded from trial evidence which had been secured by means of an unlawful search and seizure." *Simmons v. United States*, 390 U.S. 377, 389 (1968) (citing *Weeks v. United States*, 232 U.S. 383 (1914).

### III.  Analysis

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.  The Fourth Amendment applies to all seizures of a person, including a brief detention short of a traditional arrest.  *United States v. Birgnoni-Ponce*, 422 U.S. 873, 878 (1975).  "[T]he reasonableness of such seizures depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Id.*  On account of an investigative stop, the Fourth Amendment standard is satisfied when an "officer's action is supported by reasonable suspicion to believe that criminal activity 'may be afoot.'" *United States v. Arvizu*, 234 U.S. 266, 273 (2002) (quoting *Terry v. Ohio*, 392 U.S. 1, 24 (1968)).

When reasonable suspicion is at issue, courts must look at the "totality of the circumstances of each case to see whether the [] officer has a particularized and

objective basis for suspecting legal wrongdoing." *Id.* (internal quotations and citations omitted). The officer must have specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that a particular person is engaged in criminal conduct. *United States v. Thomas*, 211 F.3d 1186, 1189 (9th Cir. 2000). The reasonable suspicion standard is not a particularly high threshold to reach. "The quantum of proof needed for reasonable suspicion is less than a preponderance of evidence and less than probable cause." *United States v. Tiong*, 224 F.3d 1136, 1140 (9th Cir. 2000).

If law enforcement violates a defendant's Fourth Amendment right to be free from unreasonable searches and seizures, then, under the exclusionary rule, "all evidence seized as a result of the unconstitutional actions of law enforcement must be suppressed as the fruit of the poisonous tree." *United States v. Morales*, 252 F.3d 1070, 1073 (9th Cir. 2001) (citing *Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963)).

Here, Mitchell argues that law enforcement lacked reasonable suspicion because "nothing that [Sergeant] Call observed [] would demonstrate that a crime was being committed." (Doc. 32 at 11). Specifically, Mitchell argues that he did not violate Park County's fire ordinance because he was not "operating" a motorized vehicle off a designated road. (*Id.* at 5; Doc. 37-2 at 3). Mitchell states he was "simply taking a brief nap before moving on to his next destination." (Doc. 32 at 5).

6

Additionally, Mitchell argues that he had "every right under the Constitution" to carry a firearm in his vehicle. (*Id.* at 8). "The fact that he *may* be a prohibited person was only discerned *after* the illegal conduct by law enforcement." (*Id.*). Accordingly, Mitchell requests the Court to suppress the firearm discovery because Sergeant Call's seizure was not based in articulable facts. (*Id.* at 5–8).

The Government disagrees. The Government argues that several factors provided law enforcement with reasonable suspicion and reasons for continued detainment including: (1) Sergeant Call's observation of Mitchell's vehicle parked off road and on private property; (2) Sergeant Call's knowledge and experience in state and local law; (3) Mitchell's admission that he did not have a driver's license; (4) the discovery of the Sweet Grass County warrant; and (5) Mitchell's admission that he was on parole. (Doc. 37 at 8–13).

The Court will address the parties' arguments in turn. First, as they relate to Sergeant Call's observations and experience during the initial stop and second, as they relate to Mitchell's detainment and discovery of the firearm before his arrest.

A.   *The Initial Stop*

First, Mitchell argues that he was not "operating" his vehicle when Sergeant Call saw Mitchell's car in the field. (Doc. 37 a 6). Thus, Mitchell could not have violated the local fire ordinance that prohibited "operating motorized vehicles off designated roads" because Sergeant Call did not observe Mitchell operating the

7

vehicle. (*Id.* at 6–7; Doc. 37-2 at 3). In response, the Government argues that Sergeant Call had reasonable suspicion to believe that Mitchell was trespassing on private land and violating a local fire ordinance when he observed Mitchell's vehicle parked off the road in a field. (Doc. 37 at 8–11).

In *Terry*, the officer observed the defendant (petitioner) and his associate repeatedly walk back and forth, look into a store window, and confer with one another. 392 U.S. at 6. Though the series of acts was "perhaps innocent in itself," the Court found that, taken together, they "warranted further investigation." *Id.* at 22. Notably, the Court opined that "[i]t would have been poor police work indeed for an officer of 30 years' experience in the detection of thievery from stores in this same neighborhood to have failed to investigate this behavior further." *Id.* at 23.

In the suppression hearing, Sergeant Call testified that he has served with Parky County's Sheriff Office for over 11 years. He trained at the Montana Law Enforcement Academy and the Montana Highway Patrol Advanced Academy. He stated that he is familiar with both state and county law. Specifically, he testified to his familiarity with Park County Fire Ordinance Number 34. (Doc. 37-2). Ordinance 34 was an emergency ordinance implementing stage two fire restrictions due to high temperatures, winds, and low precipitation occurring within Park County. (*Id.* at 1). In short, the ordinance prohibited activities and uses that might ignite a wildfire. According to the ordinance, "operating motorized vehicles off

8

designated roads and trails" "[was] prohibited until [the] ordinance [was] rescinded." (*Id.* at 2–3). The ordinance was signed on June 30, 2021, and remained in effect on August 8, 2021, when Sergeant Call saw Mitchell's Jeep parked off Chicken Creek Lane.

Sergeant Call testified that around 4:00 a.m., he did not see a vehicle parked off the road while driving away from the patrol offices on Chicken Creek Lane. On his return, approximately a half hour later, Sergeant Call saw Mitchell's Jeep parked roughly 15 yards off the gravel road. Though Mitchell was not "operating" the vehicle at the time Sergeant Call saw the Jeep, Mitchell must have operated the Jeep from the road onto the field sometime between 4:00 a.m. and 4:30 a.m. Therefore, Sergeant Call had reason to suspect that Mitchell was in violation of Ordinance 34 based on his observation of the recently parked vehicle and his knowledge of local fire restrictions in place at the time.

Furthermore, under Montana law, "a person commits the offense of criminal trespass to property if the person knowingly enters or remains unlawfully in or upon the premises of another." Mont. Code. Ann. § 45-6-203(1)(b) (2023). Sergeant Call observed Mitchell's Jeep parked off the road and in a farmer's field. Sergeant Call knew the field belonged to a farmer based on his familiarity with the surrounding area, specifically the land adjacent to the patrol offices. Accordingly, Sergeant Call's 11 years of experience in Park County coupled with his knowledge of state

9

and county law gave him reason to suspect that Mitchell was potentially engaged in criminal conduct—namely, trespassing and operating a vehicle off road during stage two fire restrictions.

Like the officer in *Terry*, it would have been poor police work if Sergeant Call had not investigated, given his tenured experience as a Park County police officer, his knowledge of local and county law, and his observations of Mitchell's Jeep. Though taking a nap in a parked car is innocent behavior, operating and parking a vehicle approximately 15 yards off a gravel road on private land at 4:30 a.m. when fire restrictions were in place warranted further investigation. Thus, Sergeant Call had an objective and particularized suspicion that Mitchell was engaged in "legal wrongdoing." *Arvizu*, 234 U.S. at 273.

In light of the totality of circumstances, giving due weight to Sergeant Call's experience and observations, this Court finds that law enforcement had a reasonable, particularized basis for suspecting Mitchell was violating state or county law, specifically Park County Ordinance 34.

### B.  Continued Detainment

Second, Mitchell argues that the discovery of firearms and his felonious history was discovered as fruit of an illegal *Terry* stop. (Doc. 32 at 8). Specifically, he states that "[t]he fact that he *may* be a prohibited person was only discerned *after* the illegal conduct by law enforcement." (*Id.*). Thus, Mitchell argues that the

10

evidence should be suppressed. In response, the Government maintains that Sergeant Call gleaned enough new facts during Mitchell's detainment to support the probable cause necessary to effectuate an arrest. (Doc. 12 at 11–13). Thus, the Government argues that Mitchell's detainment was proper. (*Id.*).

A *Terry* stop "accepts the risk that officers may stop innocent people." *Illinois v. Wardlow*, 528 U.S. 119, 126 (2000). Unlike an arrest, a "*Terry* stop is a far more minimal intrusion, simply allowing the officer to briefly investigate further. If the officer does not learn facts rising to the level of probable cause, the individual must be allowed to go on his way." *Id.* If a stop is too prolonged it becomes a "de facto arrest that must be based on probable cause." *United States v. Bullock*, 632 F.3d 1004, 1015 (7th Cir. 2011).

Here, Mitchell's arguments are not relevant because the Court has found that Sergeant Call had sufficient reasonable suspicion to approach Mitchell's Jeep. Further, Sergeant Call gathered enough information while the investigation progressed to develop probable cause and allow for continued detention. In the 15 minutes after Sergeant Call knocked on Mitchell's window, he learned that: (1) Mitchell was driving without a license; (2) Mitchell's license was suspended; (3) Sweet Grass County had a warrant for Mitchell's arrest; (4) Mitchell had a prior felony conviction; (5) Mitchell had three firearms in the vehicle; and (6) Mitchell was on parole. (Doc. 11-1 at 01:43–13:56). Provided the information above, the

11

Court finds that Sergeant Call's investigation was proper and rose to the level of probable cause. No question of the propriety of the arrest itself is before the Court.

## IV. Conclusion

Under the totality of circumstances, this Court finds that Sergeant Call's personal observations and experience constitute sufficient basis to form reasonable suspicion which ripened into a valid *Terry* stop. Further, the evidence of the firearm and subsequent statements will not be suppressed because Sergeant Call gathered enough information during the investigation to develop probable cause.

IT IS SO ORDERED that Defendant William Everett Mitchell's Motion to Suppress (Doc. 31) for lack of reasonable suspicion to support a *Terry* stop is DENIED.

DATED this 15th day of November, 2024.

SUSAN P. WATTERS
United States District Judge